IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY JONES, | ) | CASE NO. 1:13CV358 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| TERRY TIBBALS, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Stanley Jones ("Petitioner" or "Jones") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Jones is detained at the Mansfield Correctional

Institution, having pled guilty to aggravated murder, kidnapping, and having weapons under

disability in the Cuyahoga County, Ohio, Court of Common Pleas.  Doc. 7-15.[1]  *State v. Jones*,

No. CR-09-529670-A (Cuyahoga Cty. Common Pleas Ct. filed May 19, 2010).  On May 18,

2010, the trial court sentenced Jones to life in prison with the possibility of parole after thirty

years on the aggravated murder charge, seven years in prison on the kidnapping charge, and

three years on the weapons charge, to be served concurrently; the court merged the attendant

firearm specifications and sentenced Jones to three years, to be served consecutively to the life

sentence, for an aggregate sentence of life in prison with the possibility of parole after thirty-

three years.  Doc. 7-19, p. 1.

On February 19, 2013, Jones filed his Petition for Writ of Habeas Corpus setting forth

two grounds for relief.  Doc. 1, p. 14.  This matter has been referred to the undersigned

Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth

---

[1]  Doc. page citations are to ECF Doc. page numbers.

1

more fully below, both grounds fail on the merits.  Thus, the undersigned recommends that Jones' Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying facts

The state courts did not recite the facts that gave rise to the charges against Jones.  A brief synopsis, however, is required to understand the parties' arguments.[2]  On August 19, 2009, at approximately 7:00 p.m., Jones lured Crystal Walters, the mother of his children (Doc. 7-46, p. 333), from her home and into his car, a 1996 Pontiac Bonneville (Doc. 7-46, p. 334), under the pretense of signing papers regarding an automobile.  Doc. 7-45, p. 3.   Walters' children saw her get into the Bonneville and never saw her again.  Doc. 7-45, p. 3; Doc. 7-46, p. 333.  Later that night, Earl Wilson, while working at Red Walters Restaurant, saw Jones and his Bonneville near the dumpster behind the restaurant.  Doc. 7-46, p. 334.  Wilson subsequently found Crystal Walters' dead body in the dumpster.  Doc. 7-46, p. 334.   She had been shot in the face.  Doc. 7-45, p. 2.

#### 2.  Procedural history

---

[2]  The summary of underlying facts is taken from the Bill of Particulars (Doc. 7-45) and the state's narrative during sentencing (Doc. 7-46).

The Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio, set forth the procedural history as follows:[3]

> {¶ 2} On October 8, 2009, a Cuyahoga County Grand Jury returned a four-count indictment charging Jones with two counts of aggravated murder with both felony murder and one- and three-year firearm specifications, kidnapping with one- and three-year firearm specifications, and having weapons while under disability. As this was a capital case, the trial court conducted extensive pretrial discovery and other proceedings. On May 13, 2010, during a hearing on a defense motion to suppress, the state of Ohio, ("state") advised the court of a plea offer it made to Jones. Specifically, the state offered to allow Jones to plead to one count of aggravated murder with the felony murder and one-year firearm specifications deleted, kidnapping with the one-year firearm specification deleted, and having a weapon while under disability. In exchange, the state would also dismiss the second charge of aggravated murder. Counsel for the defense indicated that he conveyed the plea offer to Jones and that if he expressed an interest in the plea, counsel would contact the state and the court.

*State v. Jones*, 2011 WL 2434224, at *1-2 (Ohio Ct. App. June 16, 2011).

Prior to trial, Jones, through counsel, waived his right to a speedy trial and the trial was continued from December 1, 2009, until June 30, 2010.  Doc. 7-4.  A week later, on December 9, 2009, Jones, *pro se*, filed a motion to reinstate his right to a speedy trial. Doc. 7-5.  On December 21, 2009, Jones, through counsel, filed a motion to suppress all statements made by Jones that the prosecution would seek to introduce at trial. Doc. 7-6.  Jones, *pro se*, filed a second motion with respect to his speedy trial rights and his objection to his counsels' motion to suppress.  Doc. 7-7.  The trial court held the motion to suppress in abeyance until it received a written notice indicating either that Jones was withdrawing the motion to suppress or that Jones wanted to proceed with the motion to suppress.[4]  Doc. 7-8.  Thereafter the trial court denied the motion to suppress.  Doc. 7-9.  On February 18, 2010, the trial court denied Jones' *pro se* motions to

---

[3] The facts concerning the procedural history are taken from the Eighth District Court of Appeals' decision *State v. Jones*, No. No-95284 (Ohio Ct. App. June 16, 2011); 2011 WL 2434224 (Ohio Ct. App. June 16, 2011). Jones has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

[4] In its brief filed with the state trial court, the prosecution identified eighteen *pro se* motions filed by Jones between December 10, 2009, and January 21, 2010.  Doc. 7-10, pp. 2-3.

revoke his speedy trial waiver. Doc. 7-10.  The court noted that Jones waived his speedy trial right in open court and sought to revoke his waiver for strategic reasons in the hope that the state would not be prepared to proceed to trial.  Doc. 7-10, pp. 2, 4.

The Ohio Court of Appeals continued its description of the history of the case:

{¶ 3} On May 17, 2010, Jones's trial began. The trial court summoned potential jurors, instructed them to complete jury questionnaires with voir dire to begin that afternoon. The trial court's afternoon session began with an announcement from the state that Jones had accepted the State's previously offered plea. Counsel for the defense agreed and thanked the court for allowing Jones to discuss the plea offer with his brother earlier that afternoon in the courtroom.[1]

[FN1] The trial court's docket reflects an entry by the court ordering the Cuyahoga County Sheriff to arrange for "an in court visitation in courtroom 18–D, between the defendant and his family members, Calvin Jones and James Gill."

{¶ 4} The state modified its original plea offer in two ways: the state stipulated that the three-year firearm specifications on the aggravated murder and kidnapping counts would merge and the state would seek a lesser sentence if Jones provided the court with a full allocution of the facts and circumstances of his case. The court then engaged in a lengthy colloquy with Jones in which it asked, among other things, the following:

"The Court: So, Mr. Jones, if you do plead guilty here this afternoon, is this something that you are doing of your own choice, after thoughtful consideration?

"The Defendant: Yes, it is, your Honor.

"The Court: Are you being forced or pressured to do this when you don't want to do it?

"The Defendant: No.

"The Court: And are you pleading guilty, if you do so, because indeed you committed these crimes?

"The Defendant: Yes." Tr. 267.

The trial court accepted Jones' plea and found him to be guilty as outlined above and announced its intention to proceed with sentencing later that same day.

{¶ 5} When the parties appeared for sentencing that afternoon, however, Jones indicated in open court that he wanted to withdraw his guilty pleas. The trial court briefly questioned Jones and set a hearing on Jones's motion for the following day. On May 18,

2010, the trial court conducted a hearing. The court swore Jones in as a witness and he explained that he pleaded guilty in response to pressure from his brother, and by his attorneys, to avoid the death penalty. Throughout the hearing, Jones repeatedly stated that the plea he entered was not the deal he wanted and that he desired to go to trial. The court posed the following question to the defendant, "what are your reasons to support your withdrawal of the plea?" to which Jones answered, " * * * I was getting pressured, telling me I was going to get the death penalty. That's the only reason * * *." The trial court also heard from defense counsel, who spoke only to correct the record, and from the state. The trial court recessed to consider the issue and resumed on the record that same afternoon. The trial court denied Jones's motion to withdraw his guilty plea, providing a detailed statement surrounding its reasons.

{¶ 6} The court proceeded directly to sentencing and imposed a sentence of life in prison with parole eligibility after thirty years on the aggravated murder charge, seven years in prison on the kidnapping charge, and three years on the having weapons while under disability charge. The trial court ordered all prison terms to run concurrently, but consecutive to the three-year terms for the firearm specification for a total prison sentence of thirty-three years to life.

*State v. Jones*, 2011 WL 2434224, at *1-2 (Ohio Ct. App. June 16, 2011).

## B. Direct Appeal

On June 16, 2010, Jones, through new counsel, timely appealed to the Ohio Court of

Appeals.  Doc. 7-20.  In his brief, Jones raised the following assignments of error:

1. The trial court erred, to the prejudice of Defendant's right to Due Process under the 14th Amendment to the United States Constitution, in denying Defendant's Motion to Vacate his guilty plea.

2. The trial court erred, to the prejudice of Defendant's right to the assistance of counsel under the 6th Amendment to the United States Constitution, in failing to appoint counsel for Defendant at the hearing on the Defendant's Motion to Vacate his guilty plea.

Doc. 7-21, p. 2.  On June 16, 2011, the state Court of Appeals affirmed the judgment of the trial

court.  Doc. 7-23, p. 12.

## C. Ohio Supreme Court

On August 1, 2011, Jones, through different counsel, appealed to the Ohio Supreme

Court.  Doc. 7-24.   He presented the following assignments of error:

1. A trial court abuses its discretion, to the prejudice of the defendant's right to due process, when it denies a motion to withdraw a guilty plea, the motion is made within hours of the plea, the defendant consistently professed innocence, and the State cannot show prejudice from allowing the defendant to withdraw the plea. Fourteenth Amendment, United States Constitution; Section 16, Article 1 of the Ohio Constitution.

2. A criminal defendant is denied the constitutionally guaranteed right to counsel when a trial court fails to appoint counsel at a hearing that addresses a defendant's presentence motion to withdraw the defendant's guilty plea, and when issues raised by the defendant prevent counsel from advocating on the defendant's behalf. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I of the Ohio Constitution.

Doc. 7-25, p. 2.  On November 2, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Doc. 7-27.

### D. Application to Reopen

On September 6, 2011, Jones, proceeding *pro se*, filed an application to reopen his appeal pursuant to App. R. 26(B).  Doc. 7-28.  He alleged that his appellate counsel was ineffective for not raising the following error on direct appeal:

1. The trial court erred, to the prejudice of Defendant's right to due Process under the 14th Amendment to the United States Constitution, by requiring Defendant to proceed pro se, without securing a knowingly, intelligently and voluntarily waiver of the right to counsel.

Doc. 7-28, p. 2.  On February 22, 2012, the Ohio Court of Appeals denied Jones' application to reopen.  Doc. 7-31.

On April 9, 2012, Jones, *pro se*, appealed this decision to the Ohio Supreme Court, raising the same claim.  Docs. 7-32; 7-33, p.6.  On June 20, 2012, the Ohio Supreme Court dismissed Jones' appeal as not involving any substantial constitutional question.  Doc. 7-34.

### E.  Second Motion to Withdraw Guilty Plea

On January 11, 2012, Jones, *pro se*, filed a written motion to withdraw his guilty plea pursuant to Ohio Criminal Rule of Procedure 32.1, along with exhibits. Doc. 7-35, pp. 1-2. Jones claimed ineffective assistance of trial counsel and that his guilty plea was not knowingly,

voluntarily, and intelligently made.  Doc. 7-35, p. 1.  On January 20, 2012, the trial court denied

Jones' motion.  Doc. 7-38.  Thereafter, Jones, *pro se*, filed a motion for findings of facts and

conclusions of law.  Doc. 7-39.[5]

On March 30, 2012, Jones appealed the trial court's denial of his second motion to

withdraw his guilty plea.  Doc. 8-1, pp. 2-22.  He raised the following assignments of error:

> 1.  The trial court abused its discretion by denying Defendant's motion to withdraw guilty
> plea since Defendant's guilty plea was not made knowingly, intelligently, and
> voluntarily.

> 2.  The trial court abused its discretion in denying Defendant's post sentence motion to
> withdraw his guilty plea without first conducting an evidentiary hearing when the motion
> was supported by sufficient documentary evidence which if true, would have been
> tantamount to a showing of manifest injustice.

Doc. 8-1, p. 2.  On September 13, 2012, the Ohio Court of Appeals denied Jones' appeal, finding

that his claims were barred by the doctrine of *res judicata*.  Doc. 7-41, p. 5.[6]

On October 19, 2012, Jones, *pro se*, appealed to the Ohio Supreme Court.  Doc. 7-42.  He

asserted the following two propositions of law:

> 1.  A trial court abuses its discretion by denying a defendant's motion to withdraw guilty
> plea, when the plea was not made voluntarily, knowingly and intelligently in violation of
> the fifth, sixth and fourteenth amendments to the united states constitution and article one
> sections ten and sixteen of the [O]hio state constitution.

> 2.  A trial court abuses its discretion by denying a defendant's motion to withdraw guilty
> plea, without first conducting an evidentiary hearing, in violation of the fourteenth
> amendments to the [U]nited [S]tates constitution.

Doc. 7-43, pp. 8, 14.  On February 6, 2013, the Ohio Supreme Court declined to accept

jurisdiction pursuant to S. Ct. Prac. R. 7.08(B)(4).  Doc. 7-44.

### F. Federal Habeas Petition

---

[5]  It does not appear that the trial court ruled on Jones' motion for findings and conclusions.  *See*
http://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Docket.aspx?q=jbfgYTCERJAaOPeLzaLj4w2 (last
visited 5/4/2015).

[6]  On September 24, 2012, Jones filed a motion for reconsideration, Doc. 8-2, which the state Court of Appeals
denied.  *See* http://cpdocket.cp.cuyahogacounty.us/COA_CaseInformation_Docket.aspx?q=NZkh-
x_zOlE7OpM_P57mgQ2 (last visited 5/4/2015).

On February 19, 2013, Jones, *pro se*, filed his Petition for a writ of habeas corpus.  Doc.

1.  He listed the following grounds for relief:

> **Ground One:** A criminal defendant is denied the constitutionally guaranteed right to counsel when a trial court fails to appoint counsel at a hearing that addresses a defendant's presentence motion to withdraw defendant's guilty plea, and when issues raised by the defendant prevent his counsel from advocating on the defendant's behalf. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I of the Ohio Constitution.
>
> **Ground Two**: A trial court abuses its discretion by denying a defendant's motion to withdraw guilty plea, when the plea was not made voluntarily, knowingly and intelligently in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I Sections 10, and Sixteen of the Ohio State Constitution.

Doc. 1, p. 14.  Jones' Petition includes two pages of supporting facts.  Doc. 1, pp. 14-15.  On

June 7, 2013, Respondent filed a Return of Writ.  Doc. 7.  Jones filed a motion to supplement the

record (Doc. 8), which the Court granted (Doc. 18).[7]  Jones thereafter filed a Traverse (Doc. 13)

and Respondent, with leave of Court, filed a sur-reply (Doc. 41-1).  Jones, without leave of

Court, filed a response to Respondent's sur-reply (Doc. 17).

Respondent argues that Ground One fails on the merits and that Ground Two is not

cognizable, is procedurally defaulted, and fails on the merits.  Docs. 7, pp. 18-19, 23, 29; 14-1,

pp. 2-13, 13-14.

## II. Law

### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to Jones' habeas petition because he filed it after the

effective date of the AEDPA.  28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir.

20 07).  Under the AEDPA, a petitioner must meet certain procedural requirements in order to

---

[7] Jones sought, and was granted, leave to supplement the record to include his assignment of error and brief appealing the trial court's denial of his second motion to withdraw his guilty plea and his application for reconsideration of the trial court's denial of his second motion to withdraw his guilty plea.  Doc. 8.

have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Id.*

**Procedural Default.**  Procedural default may occur in two ways.  *Id.*  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under  28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

10

at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2*005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 20*05). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (200*6).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (20*11) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (20*04)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 20*11). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

#### A. Claims Overview

Jones sets forth two grounds for relief in his petition. Doc. 1, p.14. Respondent argues that Ground One fails on the merits and Ground Two is non cognizable, procedurally defaulted, and fails on the merits. For the reasons that follow, the undersigned concludes that both of

11

Jones' grounds fail on the merits and rejects Respondent's alternative arguments with respect to Ground Two.

### B. Ground One fails on the merits

In Ground One, Jones argues that the trial court denied his right to counsel at a "critical stage"—the pre-sentence hearing on his oral, *pro se*, motion to withdraw his guilty plea—and that the trial court should have, *sua sponte*, appointed or substituted new counsel to represent him at the hearing.  Doc. 1, p. 14; 13, p. 6.  Jones emphasizes that he is not claiming ineffective assistance of counsel.  Doc. 13. p. 14.  Instead, he asserts that his counsel was "constructively absent" during the hearing on his motion to withdraw his guilty plea, thereby violating his Sixth Amendment right to counsel pursuant to *United States v. Cronic*, 466 U.S. 648 (1984).  Doc. 13, pp. 14-17.

In *Cronic*, the Court reiterated that it is a Sixth Amendment violation when counsel is "either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  466 U.S. at 659, n. 25.   In such a case, a petitioner need not show prejudice resulting from counsel's absence; instead, prejudice is presumed.  *Id*.  Jones asserts that his counsel was "constructively absent" because counsel disagreed with Jones' decision to withdraw his plea and expressly declined to advocate on his behalf during the hearing.[8]  Doc. 13, p. 18.  He also contends that the trial court prevented counsel from assisting him, citing the Ohio Court of Appeals' statement that the trial court "ordered" Jones' counsel to refrain from arguing on Jones' behalf.  Doc. 13, pp. 10-11.

With respect to this claim, the Ohio Court of Appeals affirmed the trial court's decision, explaining,

---

[8]   The trial court appointed two attorneys to represent Jones; both were present at the hearing on Jones' motion to withdraw.  *See* Doc. 7-46, p. 287.

{¶ 23} In his brief, Jones cites to no legal authority requiring a trial court to first, sua sponte make a determination that trial counsel effectively withdrew from representing an accused, and second, to appoint new counsel for that defendant. Such a requirement would place an undue and impossible burden on trial court judges. Moreover, although Jones's trial counsel did not argue Jones's motion for him, that was ordered at the behest of the trial court. Jones contended that he was coerced into making the plea, and the trial court correctly recognized that his trial counsel could not be expected to argue that they had participated in doing so. Furthermore, the trial court recognized that allowing Jones's counsel to testify might provide contradictory evidence, thereby weakening Jones's claim.

{¶ 24} Lastly, neither Jones, nor his counsel requested the court to assign new counsel to represent Jones on his motion to withdraw his guilty plea. The trial court, and his counsel, afforded Jones the opportunity to argue his motion in the same manner in which he made it, orally and pro se. Lastly, as outlined above, the trial court conducted a full and comprehensive hearing on Jones's motion to withdraw his guilty plea. We cannot now say that the trial court erred when it failed to sua sponte appoint new counsel for Jones.

*Jones*, 2011 WL2434224, at *4-5.

Jones cannot prevail on Ground One unless the state Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).

### 1. "Contrary to" clause

Jones contends that the Ohio Court of Appeals' decision was contrary to clearly established federal law.  Doc. 13, p. 18.  He cites *United States v. Ash*, 413 U.S. 300 (1973), in support.  Doc. 13, p. 9.  In *Ash*, the United States Supreme Court considered whether the Sixth Amendment provides a right to counsel for a defendant when the government conducts a photographic display for a witness to attempt to identify the offender.  413 U.S. at 321.  *Ash* does not support Jones' position; *Ash* did not decide whether a presentence hearing on a motion to withdraw a guilty plea is a critical stage that confers a right to counsel under the Sixth Amendment.

For the state Court of Appeals' decision in Jones' case to be "contrary to" a Supreme Court holding, there must be a Supreme Court case that "confronts the specific question

presented by this case." *Woods v. Donald*, 135 S.Ct. 1372, 1377 (2015) (internal quotation marks and citation omitted) (explaining that, because the Supreme Court had never decided the specific question in that case—whether prosecution testimony about codefendants is a critical stage requiring the presence of counsel under *Cronic*—the Sixth Circuit erred in finding that the state court of appeals' decision was contrary to a Supreme Court holding). Jones does not cite a Supreme Court case that has addressed the specific issue in this case and the undersigned is not aware of such a case. Accordingly, the undersigned finds that the state Court of Appeals' decision is not contrary to a Supreme Court holding. *See id*.

### 2. "Unreasonable application" clause

Jones argues that, based on the definition of a "critical stage" announced in *Ash*, a motion to withdraw a guilty plea is a critical stage. Doc. 13, p. 10. Because his counsel "effectively withdrew" from representing him at his hearing, Jones contends, he was without counsel and, under *Cronic*, suffered a constitutional violation. Doc. 13, pp. 10-11.

In denying Jones relief, the Ohio Court of Appeals pointed out that there was no legal authority requiring a trial court, *sua sponte*, to determine that defense counsel "effectively withdrew" from representation at a hearing on a motion to withdraw a guilty plea and appoint a defendant new counsel. *Jones*, 2011 WL 2434224, at *4-5. The court explained that such a requirement "would place an undue and impossible burden on trial court judges." *Id*. The state Court of Appeals observed that, at the hearing, the trial court directly questioned Jones about his reasons for wanting to withdraw his guilty plea and that the trial court's questioning was "full and comprehensive." *Id*. at 5. The state Court of Appeals noted that, at the hearing, Jones stated that his guilty plea was a result of pressure by his brother and his attorneys and that he entered the plea to avoid the death penalty. *Id*. at *2. He described how he "was getting pressured,

telling me I was going to get the death penalty. That's the only reason [I pled guilty]."[9] *Id*.  Jones also "repeatedly stated that the plea he entered was not the deal he wanted and that he desired to go to trial." *Id*.  The state Court of Appeals referenced the trial court's plea colloquy wherein Jones testified that he was not pressured or forced to plead guilty and that he had committed the crimes he was charged with. *Id*. at *1, 5.

*Hines v. Miller*, 318 F.3d 157 (2d Cir. 2003), is strikingly similar to this case.  In *Hines*, a defendant faced a stiff sentence for charges of second degree murder and a related weapons charge. *Id*. at 158.  His counsel negotiated a plea deal. *Id*. at 159.  Counsel showed Hines a videorecording of his confession to aid in his decision whether to plead guilty. *Id*.  Hines discussed his decision with his aunt, who encouraged him to accept the plea deal. *Id*.  Immediately after the conversation with his aunt, Hines pled guilty to second degree murder. *Id*.  During the plea proceedings, Hines stated that no one had forced him to plead guilty and that he had committed the crime. *Id*.

Prior to sentencing, Hines, *pro se*, filed a motion to withdraw his plea. *Id*.  He argued that he was innocent and had been coerced by his attorney to plead guilty. *Id*.  At sentencing, the trial court addressed Hines' motion. *Id*.  Hines' counsel refrained from commenting on Hines' accusations of coercion; counsel requested that he be removed from representing Hines if the court allowed Hines to withdraw his plea. *Id*.  The state objected. *Id*.  Hines' counsel argued that he was "at a great disadvantage to defend the defendant"; asked the court to remove him; and asked the court to appoint new counsel to argue Hines' motion to withdraw his plea. *Id*.  The court did not remove counsel or appoint new counsel—instead, the court "questioned Hines directly, pointing out that he had stated on the occasion of his guilty plea that no one had forced him to plead guilty." *Id*.  Hines complained to the court that his counsel had not wanted to

---

[9]  In *Brady v. United States*, 397 U.S. 742, 755 (1970), the Supreme Court stated, "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty."

represent him from the beginning of his case, had told him that he had no chance to win at trial, and that he should "cop out" and plead guilty.  *Id.*  Hines described that he thus pled guilty "out of fear, pressure, extreme pressure."  *Id.*  He admitted that he spoke to his aunt right before pleading guilty and stated, "She thought it would be good for me to take the [plea].  So I took it but—."  *Id.*  The trial court denied Hines' motion, reiterating that, during his plea proceedings, Hines admitted his guilt and stated that no one had forced him to plead guilty.  *Id.*  The court immediately sentenced him per the plea agreement.  *Id.*

On direct appeal, Hines argued to the state court of appeals that his due process rights were violated when the trial court denied his motion to withdraw his plea without appointing new counsel and without conducting an evidentiary hearing.  *Id.* at 159-160.  He also argued that counsel was ineffective in part because he used the videotaped confession to induce Hines to plead guilty.  *Id.* at 160.  The state court of appeals affirmed, and Hines filed a habeas petition in federal court raising the same arguments.

The Second Circuit affirmed the district court's denial of Hines' petition, stating:

> The Supreme Court has, of course, issued numerous opinions concerning various aspects of a defendant's right to counsel . . . .  But the Court has never specifically addressed a claim such as the one before us, nor has it stated how such a claim should be analyzed, *i.e*., as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea, or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance.

*Id.* at 163 (internal citations omitted).  The court observed that the facts presented in the case before it had been considered by a number of courts under a number of theories, including the right to counsel, ineffective assistance of counsel based on a conflict of interest, or a combination of both.  *Id.* at 163-164.  The court explained that, regardless of the type of analysis courts applied, many had upheld a trial court's denial of a motion to withdraw a guilty plea when substitute counsel was not appointed.  *Id.* at 164.  The court went on to explain,

16

> Given the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue and the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding—as the dissent does—that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. Accordingly, we affirm the district court's rejection of this claim.

*Id*.

 "[W]here the precise contours of [a] right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods,*135 S.Ct. at 1377 (citing *White v. Woodall, 134 S.Ct. 1697, 1705 (2014)* (internal quotation marks and citations omitted)). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White, 134 S.Ct. at 1706*.  Again, there is no Supreme Court precedent establishing that a hearing on a presentence motion to withdraw a guilty plea is a critical stage at which the right to counsel attaches.  Jones, therefore, seeks a ruling that the Ohio Court of Appeals erred because it did not extend Supreme Court precedent to apply to the facts in his case.  Under these circumstances this Court cannot provide habeas relief.  *See id*. ("[T]his Court has never adopted the unreasonable-refusal-to-extend rule[.]").  Although a fact pattern need not be "identical" before a determination can be made that the state court unreasonably applied Supreme Court precedent, application of the precedent should be "so obvious" that there can be no "'fairminded disagreement' on the question." *Id*. (quoting *Harrington*, 562 U.S. at 103)).  As illustrated by the opinion in *Hines*, *supra*, there is considerable fairminded disagreement on the question raised by Jones here.  *See also Gilbert v. Hudson*, 2009 WL 3246978, at *15 (N.D.Ohio Oct. 5, 2009) (post-sentence motion to withdraw guilty plea is not a "critical stage"; moreover, "a pre-sentence motion to withdraw guilty plea presents a very weak claim," citing *Hines*).

Accordingly, the Ohio Court of Appeals' decision that the trial court did not err in failing to appoint Jones new counsel at his hearing to withdraw his guilty plea is not constitutional error; "[w]ithin the contours of *Cronic*, a fairminded jurist could conclude that a presumption of prejudice is not warranted[.]" *Woods*, 135 S.Ct. at 1378.  Because the state Court of Appeals' decision was not contrary to and did not unreasonably apply Supreme Court precedent, the undersigned determines that Ground One fails on the merits.

### C. Ground Two fails on the merits

#### 1. Construction of Ground Two

Ground Two of Jones' Petition states,

A trial court abuses its discretion by denying a defendant's motion to withdraw guilty plea, when the plea was not made voluntarily, knowingly and intelligently in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I Sections 10, and Sixteen of the Ohio State Constitution.

Doc. 1, p. 14.

In Ground Two, Jones argues that the trial court abused its discretion when it denied his second, written motion to withdraw his guilty plea.  Docs. 1, p. 14; 13, p. 18.  He asserts that his trial counsel was ineffective for failing to provide him with a witness statement and activity log that would have impeached the state's key witness, Earl Wilson.  Doc. 1, p. 14.  He explains that he would not have pled guilty had he known these documents existed, and that his guilty plea was thus not entered knowingly, voluntarily, and intelligently.  Doc. 1, p. 15.

Respondent, in his Return of Writ, contends that Ground Two, as alleged, does not assert a constitutional violation, is procedurally defaulted, and fails on the merits.  Docs. 7, p. 29; 14-1, p. 13-14.  Respondent argues that Ground Two is not reviewable because it involves a perceived error of state law relating to a defendant's motion to withdraw a guilty plea under Ohio Crim. R. 32.1.  Doc. 7, pp. 27-28.  In his Traverse, Jones seeks to reframe Ground Two.  He states, "The

manner in which Ground Two was framed and placed before this Court precludes this court from

reaching the merits [] i.e., the issue as framed is not cognizable for federal review."  Doc. 13, p.

18.  Jones asks the Court "to allow ground two to be construed as follows":

> **Ground Two:**  The defendant did not voluntarily, knowingly and intelligently enter his
> pleas of guilty, and was not afforded his constitutionally guaranteed right to effective
> assistance of counsel.  Fifth, Sixth and Fourteenth Amendments for the United States
> Constitution and Article I Sections 10 and Sixteen of the Ohio State Constitution.

Doc. 13, p. 19.  Jones contends, "The underlying legal basis for relief in ground two is that Jones

was not afforded effective assistance of counsel and did not voluntarily, knowingly and

intelligently enter his guilty plea."  Doc. 13, p. 19.

Respondent rejoins that Jones' newly reframed Ground Two was not presented in his

Petition and may not be raised for the first time in his Traverse.  Doc. 14-1, p. 13.   A court is not

required to address a theory of relief asserted only in a traverse but not in the habeas petition.

*See* *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  Here, however, Jones does not assert a

new theory of relief in his Traverse; he asserts the same theory he asserts in his Petition.  In his

Petition, Jones includes supporting arguments under Ground Two that summarize his claim—his

guilty plea was not knowing, voluntary, and intelligent because of the ineffective assistance of

trial counsel.  Doc. 1, pp. 14-15.  This argument is the same argument Jones raised in state court

and the same argument he advances in his Traverse.  *See* Doc. 7-35; Doc. 13, p. 19.[10]

Accordingly, the undersigned finds that, regardless of the precise way Ground Two is framed,

Ground Two, in the Petition and in the Traverse, challenges Jones' guilty plea under the theory

that, due to the ineffectiveness of trial counsel, Jones was not apprised of certain evidence in his

case file, thereby rendering his plea not knowing and intelligent.

---

[10] The Ohio Court of Appeals characterized Jones' second, written motion to withdraw his plea as a claim that "his
plea was not knowingly made because he was denied his right to effective assistance of counsel."  Doc. 7-41, p. 4.
*See also* *State v. Bari*, Cuyahoga App. No. 90370; 2008 WL 2833951, at *2 (Oh. Ct. App. July 24, 2008)
("Ineffective assistance of counsel is a proper basis for seeking post-sentence withdrawal of a guilty plea" under
Crim. R. 32.1 (internal citation omitted)).

## 2. Ground Two is not procedurally defaulted

Respondent contends that Ground Two is procedurally defaulted because the Ohio Court of Appeals held that Jones' motion to withdraw guilty plea was barred by *res judicata*.  Doc. 7, p. 29.  "Ohio's doctrine of *res judicata* . . . provides in relevant part that a final judgment of conviction bars a convicted defendant from raising in any proceeding, except an appeal from that judgment, any issue that was raised, or could have been raised, at trial or on appeal from that judgment."  *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (citing *State v. Perry*, 10 Ohio St.2d 175 (1967)).  *Res judicata* is an adequate and independent state ground for precluding federal habeas review.  *Id*. at 967-968; *see also Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (citing *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994)) (holding that *res judicata* precludes post-conviction relief to address constitutional claims that could have been raised on direct appeal from the conviction and sentence).

Here, the Ohio Court of Appeals held, "[t]he issues [Jones] now raises regarding ineffective assistance of his trial counsel could have been raised on direct appeal.  Thus, the doctrine of res judicata bars his raising again the issue regarding his guilty plea."  Doc. 7-41, p. 5.  However, Jones' motion to withdraw his guilty plea was based on evidence outside the record—specifically, Earl Wilson's witness statements and an activity log.  It is well established that evidence outside the record may not be raised on direct appeal.  *State v. Coleman*, 85 Ohio St. 3d 129, 134 (Ohio 1999); *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000).  Thus, Jones could not have asserted this claim on direct appeal.  The state Court of Appeals, therefore, misapplied the *res judicata* procedural bar.  *See, e.g., State v. Tekulve*, 936 N.E.2d 1030, 1033 (Oh. Ct. App. 2010) ("Tekulve's Crim.R. 32.1 motion presented issues that could not have been fairly determined on direct appeal. Their resolution required examination of evidence not found in the record of the trial court's proceedings, such as Tekulve's pretrial discussions with his

appointed counsel.  Thus his motion was not barred by the doctrine of res judicata[.]").  Because the state Court of Appeals misapplied the procedural bar, Jones' claim is not procedurally defaulted.  *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded); *Richey v. Bradshaw*, 498 F.3d 344, 359-360 (6th Cir. 2007) (federal habeas claim not procedurally defaulted because Ohio court misapplied the *res judicata* bar; evidence outside the record cannot be raised on direct appeal).[11]

### 3. Ground Two states a federal constitutional claim

Respondent asserts that Jones has no constitutional right to withdraw a guilty plea.  Doc. 7, p. 27.  He cites *Akemon v. Brunsman*, 2007 WL 2891012 (S.D.Ohio Sept. 28, 2007), in support.  In *Akemon*, the federal district court reviewed the petitioner's claim that the state trial court abused its discretion under Ohio law in denying his pre-sentence Rule 32.1 motion in which he argued that his plea was not knowing, intelligent and voluntary due to the ineffectiveness of trial counsel.  *Id.* at *25.  Respondent contends, "the Court is precluded from reviewing any claim that the trial court abused its discretion under Ohio law in denying petitioner's Rule 32.1 motion to withdraw his guilty plea.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not on the basis of a perceived error of state law."  Doc. 7, p. 27 (quoting *Akemon*, 2007 WL 2891012, at *29) (internal quotation marks and citation omitted).

---

[11]  Respondent points out that because Jones did not raise this claim in a post-conviction petition, the Court is "not able to conclude either way on this factual issue because it was never presented to the state courts."  Doc. 7, p. 24. However, as noted, *supra*, ineffective assistance of counsel is a proper basis for seeking a postsentence withdrawal of a guilty plea under Crim. R. 32.1.  *See Bari*, 2008 WL 2833951, at *2; *State v. Dalton*, 793 N.E.2d 509, 514 (Oh. Ct. App. 2003).

However, this does not end the inquiry.  A challenge to a guilty plea presents a cognizable claim for federal habeas review.  *See Akemon*, 2007 WL 2891012, at *12-17 (proceeding to the merits of the petitioner's claim that his guilty plea was invalid); *Paige v. Moore*, 2008 WL 782587, at *7 (N.D. Ohio March 24, 2008).  To be valid, a guilty plea must be voluntarily and intelligently made, "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748–49 (1970).  A plea is voluntary if it is not induced by threats, misrepresentations, or promises, and the voluntariness of the plea is "determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749, 755.  A plea is intelligent when the defendant "is advised by competent counsel, he was made aware of the nature of the charges against him, and there was nothing to indicate that he was incompetent  or otherwise not in control of his mental faculties." *Id.* at 756.  "Because the decision whether or not to plead guilty ultimately rests with the client, counsel must ensure that the client's decision is as informed as possible." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir.2002) (internal citations omitted). However, "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel in the context of guilty pleas.  *Hill v. Lockhart*, 474 U.S. 52, 58 (6th Cir. 1985).  A petitioner must show that counsel's representation fell below an objective standard of reasonableness and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58-59.

When a federal habeas court finds that a claim is not procedurally defaulted, the court proceeds to the merits of the claim.  *Richey*, 498 F.3d at 359; *Hill v. Mitchell*, 400 F.3d 308, 313

(2008).  Because the state court did not reach the merits of Ground Two, the court reviews the

claim *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003)).

### 4. Jones cannot demonstrate a constitutional violation

Jones' arguments do not challenge the voluntariness of his plea.[12]  Instead, his arguments

pertain to whether his plea was knowing and intelligent.  Jones identifies the information his

counsel allegedly failed to share with him as follows:

> (1) multiple statements made by Earl Wilson, one of the state's key witness[es], who
> never identified Jones' as the perpetrator in his first initial statements to police and; (2)
> a[n] Activity log sheet that shows Jones[] was recorded as going into a storage facility
> that Jones[] rented at 8:38 P.M. and could not have been at the crime scene as Earl
> Wilson told Cleveland Police in his later statements between 8:30 and 8:40 P.M. on the
> night of the incident.

Doc. 13, pp. 21-22.[13]  For purposes of considering Jones' claims, the undersigned assumes,

without deciding, that Jones' counsel failed to provide him with the above-cited evidence.[14]

### a. Earl Wilson's statements

Jones complains, "The State of Ohio had provided [counsel] with nearly one thousand

pages of discovery.  []In the nearly one thousand pages of discovery, Jones only had knowledge

of statements made by Endia Jones, Tyquan Smiley, Tyana Smiley, Taneisha Walters,

Christopher Walters, and Earl Wilson['s] final statement to Cleveland Police."  Doc. 13, p. 32.

---

[12]  Jones has not presented an argument that his plea was involuntary.  Although he states that he pled guilty because
he was pressured by family members and his trial counsel to do so, these assertions are presented in passing in his
section regarding Ground One, not in an argument relevant to Ground Two—that trial counsel was ineffective when
they withheld evidence and without that evidence his guilty plea was not knowing and intelligent.  Furthermore,
Jones' complaints of pressure by family and counsel were explored by the trial court on his first, oral motion to
withdraw guilty plea and are part of the trial court record.  Thus, to the extent Jones presented these arguments to the
Ohio Court of Appeals in his second, written motion to withdraw guilty plea, the court properly rejected them on the
basis of *res judicata* because he could have raised the arguments on direct appeal.

[13]  Jones obtained these documents pursuant to his mother's public records request made on August 16, 2011, i.e.,
after Jones was sentenced.  Doc. 1, p. 15; 7-35, p. 71.

[14]  The possibility exists that counsel did provide the statements to Jones or that the state did not turn over the
evidence to counsel.

Jones argues that his counsels' failure to provide him with three earlier statements made by Wilson to the police constitutes ineffective assistance of counsel.  Doc. 13, p. 29.  In support, Jones identifies what amounts to impeachment evidence against Wilson—Wilson's first statement to the police in which he did not identify Jones "as the perpetrator."  Doc. 1, p. 14; 13, p. 21.

Jones states that counsel told him that Wilson had positively identified him as the perpetrator and placed him at the scene of the crime on the night in question.  Doc. 1, p. 14.  This is correct—Wilson's fourth statement to the police positively identified Jones as being at the scene of the crime on the night in question.  Doc. 7-35, p. 84-88.  Moreover, Jones admits that trial counsel explained to him that, "with their many years of professional experience, Earl Wilson's testimony would be damaging to Jones['] defense at trial, and that Jones should consider a plea."  Doc. 13, p. 29.  Jones does not dispute that Wilson's testimony would be damaging to him at trial.  Jones admits that his counsel met with him numerous times in jail and that the state turned over one thousand pages of discovery.  He nevertheless asserts that counsel should have provided him with all one thousand pages of discovery and that, by failing specifically to show him Wilson's prior statements, his counsel was ineffective, rendering his guilty plea not knowing and intelligent.  Doc. 13, pp. 26-30.

The undersigned disagrees.  Counsels' alleged failure to share Wilson's prior statements, which could be used as impeachment evidence, and counsels' advice, based on the one thousand pages of evidence, that Jones should take the state's plea offer, do not fall below an objective standard of reasonableness.  *See Hill,* 474 U.S. at 58-59.  Although Wilson, in his initial statement to police, did not identify Jones at the scene, he did identify Jones' car at the scene; another witness's statement also described a car similar to Jones' at the scene.  *See* Docs. 7-35, p. 76 (Wilson's first statement describing that a green Pontiac Bonneville pulled in the back of the

restaurant and parked by the dumpster at approximately 9:30pm or 9:40pm); 13-2, p. 1
(statement of Ethelda Patterson-Dyson describing a "green/gray colored General Motors product
(Buick, Oldsmobile or Pontiac)" that pulled behind the building between 9:30pm and 10:00pm).

Additional witness statements described Jones picking up Crystal Walters in his green
Pontiac Bonneville earlier that evening.  Doc. 7-46, p. 505.  Although Jones claimed that he had
sold the car, the two people he identified as the buyers denied purchasing the car.  Doc. 7-46, p.
306.  A jail informant relayed that Jones told him he had gotten a parking ticket on his
Bonneville on a date after the date on which he claimed he sold the car—the police obtained the
parking ticket.  Doc. 7-46, pp. 310-311.  There were statements and phone records demonstrating
that Jones had been calling Walters that afternoon and phone records showing Jones in the
vicinity of Walters' house and the restaurant.  Doc. 7-46, pp. 305-308.  In a recorded phone
conversation from the jail after his arrest, Jones told a woman to "get rid of that car."  Doc. 7-46,
p. 307.  Finally, during the hearing on Jones' motion to withdraw his guilty plea, the trial court
asked Jones why he wanted to withdraw his guilty plea and he responded, "this is not the plea
that I wanted, and I don't plead guilty."  Doc. 7-46, p. 313.  Jones did not profess his innocence.
Jones apparently now believes that he had a stronger case than he believed he had at the time of
his plea.  Based on the evidence, Jones' belief cannot be described as reasonable; even if could
be, he is not entitled to withdraw his plea merely because he discovers "long after the plea has
been accepted that his calculus misapprehended the quality of the State's case or the likely
penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757.

Jones' other arguments are equally unavailing.  He asserts that Wilson made his final
statement to the police "after securing a plea agreement" on an unrelated pending drug charge
and complains about other information in Wilson's final statement.  Doc. 13, p. 30-31.  Jones
admits that Wilson's final statement was provided to him prior to his guilty plea; thus, it cannot

serve as the basis for his ineffective assistance of counsel claim since that claim hinges on counsel not providing him with evidence in his file.  Jones also identifies a statement made by Patterson-Dyson and alleges that it "refutes" Wilson's statement in which Wilson describes an unidentified man purchasing food before pulling the Bonneville to the back of the restaurant. Doc. 13, p. 21.  That Patterson-Dyson, who by her own admission was inattentively observing the restaurant from the front seat of a car in the parking lot (Doc. 13-2), did not see a man enter the restaurant to purchase food does not mean that a man did not enter and purchase food.  Her statement that she saw a second individual walk to the car when it was parked behind the restaurant does not on its face refute Wilson's statement, nor does Jones explain how her statement "materially effects [his] substantive rights in that he would not have agreed to waive his rights associated with trial and entered pleas of guilty."  Doc. 13, p. 31.

### b. Activity log

Jones argues that an activity log from a storage facility "shows Jones was recorded as going into" the facility at 8:38 p.m.; thus, Jones argues, he could not have been at the crime scene between 8:30 p.m. and 8:40 p.m., as Wilson alleged in his first and final statements to the police.  Doc. 13, p. 22; Doc. 7-35, pp. 73-74 (activity log).  The undersigned disagrees.  Jones does not provide evidence that it takes more than eight minutes to drive from the restaurant to the storage facility.  Moreover, even if it does take longer than eight minutes to drive from the restaurant to the storage facility, it is unlikely that the difference of a few minutes would have undermined Wilson's statement that he saw Jones and his car by the dumpster between 9:30 and 9:40 p.m.  In fact, the state intended to use the activity log to show that, after leaving the restaurant, Jones drove his car to the storage facility to store his Bonneville; thereafter he was seen driving a Mercedes and the Bonneville was not seen again.  Doc. 7-46, pp. 307, 335.  Thus, counsels' alleged failure to show Jones the storage unit activity log and counsels' advice to take

the state's plea offer does not fall below an objective standard of reasonableness; nor can there

be said to be a reasonable probability that, had Jones seen the activity log, he would not have

pled guilty and would have insisted on going to trial.  *See Hill*, 474 U.S. at 58-59.

      The undersigned therefore finds that Ground Two fails on the merits.

### IV. Conclusion and Recommendation

      For the reasons stated above, the undersigned recommends that Petitioner's habeas

petition be **DENIED** because both grounds stated in the Petition fail on the merits.


Dated: May 18, 2015

_____

Kathleen B. Burke
United States Magistrate Judge


### OBJECTIONS

      Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).